# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 16-31591 |
| WEDAD AHMAD AYESH, | Chapter 13 |
| Debtor. | Honorable Janet S. Baer |

## MEMORANDUM OPINION

This matter is before the Court on the objection filed by Hale Gardens Condominium Association (the "Association") to confirmation of the chapter 13 plan filed by the Debtor, Wedad Ahmad Ayesh. Per its ruling at the evidentiary hearing on April 25, 2017, the Court is considering the Debtor's response to the Association's objection also as an objection to the Association's proof of claim and is ruling thereon as well in this Memorandum Opinion. (*See* Trial Tr. ("Tr.") 115:17-22, Apr. 25, 2017.)

## JURISDICTION

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (L).

## BACKGROUND

Prior to October 15, 2013, the Debtor incurred an arrearage to the Association with respect to condominium assessments and attorneys' fees. (*See* Ex. HG 7.[1]) On October 16, 2013, the Circuit Court of DuPage County, Illinois (the "Circuit Court") entered an agreed order for possession under which the Debtor was to pay $6,852.39 to the Association (the "Agreed

---

[1] Unless otherwise noted, all references to exhibits are to those admitted by the Court into evidence during the April 25, 2017 hearing. References to exhibits bearing the initials "HG" are to those of the Association.

Order"). (*See id.*) The Association and the Debtor agreed that the Debtor could maintain possession of her condominium unit in exchange for a $2,000 up-front payment and payments of $150 per month in addition to her regular monthly assessment of $171.26—for a total of $321.26 per month—until the amount due pursuant to the Agreed Order was satisfied. (*See* Tr. 32:15-33:1 & 65:25-67:2.)

At the hearing conducted on April 25, 2017, the Association presented two ledgers of the Debtor's account, as well as other evidence of charges and payments received from the Debtor through Hillcrest Property Management ("Hillcrest"), the management company for the Association.[2] (*See* Tr. 8:23-94; Exs. HG 2 & HG 3.) Hillcrest accepts monthly assessment payments from the Association's unit owners and maintains the books and records for the Association.[3] (Tr. 15:16-18:18.) Hillcrest is also the point of contact for unit owners on behalf of the Association. (*See generally* Tr. 42:25-44:5 & 52:21-55:4.)

According to Hillcrest's ledger of the Debtor's account, the Debtor paid $2,000 as required by the Agreed Order. (*See* Ex. HG 2, at 6; Tr. 103:23-104:6.) The Debtor then made thirteen monthly payments of $321.26, from November 4, 2013 to November 10, 2014. (*See* Ex. HG 2, at 6-7.) Thus, during that period, the Debtor paid a total of $1,950 ($150 x 13 months) toward the amount due under the Agreed Order. As of November 10, 2014, the Debtor owed $2,902.39 pursuant to the Agreed Order. (*See* Ex. A attached to this Memorandum Opinion, discussed below.)

Hillcrest did not make separate accounting entries for amounts due or received under the

---

[2] The Association also provided a third ledger, which summarizes the Association's non-attorneys' fees charged on the Debtor's account and the payments that were received from the Debtor. (*See* Ex. HG 4; Tr. 30:12-32:8.) The Court notes that the beginning balance reflected in that ledger conflicts with the total amount due under the Agreed Order. (*Compare* Ex. HG 7 (showing a total of $6,852.39), *with* Ex. HG 4, at 1 (reflecting a beginning balance of $6,898.65).)

[3] Assessments are charged to unit owners' accounts on the first of every month; unit owners must pay those assessments by the end of the same month. (*See* Tr. 18:10-18.)

Agreed Order in either of its ledgers of the Debtor's account. (*See generally* Exs. HG 2 & HG 3.) As a result, Hillcrest did not apply the Debtor's $150 payments during this period or the Debtor's future payments toward the amount due under the Agreed Order. Instead, Hillcrest applied those payments to current assessments, late fees, attorneys' fees, and, later, insufficient-funds fees ("NSF fees") and "Misc. Charges." (*See* Ex. HG 2, at 6-8.)

Not only does Hillcrest's ledger show the charges and payments from the Debtor's account, but it also reflects the method by which the Debtor paid the Association. Specifically, the Debtor paid via check from November 2013 to April 2014. (*Id.* at 1 & 6.) From May 2014 onward, however, the Debtor's bank account was debited. (*Id.* at 6-8.)

Sometime during December 2014, Hillcrest mailed the Debtor a letter informing her that, beginning in January 2015, her bank account would be debited monthly in the amount of $171.26 for her assessment. (*See* Debtor's Ex. 4.) Janice Collins, a property manager at Hillcrest who appeared as a witness on behalf of the Association, testified that the letter was intended to inform condominium unit owners only of the assessment amount due for the following year. (*See* Tr. 57:4-10.) The Debtor, however, testified that the letter led her to believe that she had completed the payments under the Agreed Order and therefore owed no further extra monthly payments of $150 to the Association. (*See* Tr. 55:5-57:3; *see also* Tr. 104:7-12.) According to Collins, Hillcrest did not communicate with the Debtor at the time the December 2014 letter was sent with respect to whether payments pursuant to the Agreed Order had been completed. (*See* Tr. 58:4-8.)

From December 9, 2014 to July 8, 2015, the Debtor's bank account was debited each month for only $171.26, the amount of her regular assessment. (*See* Ex. HG 2, at 7.) The Association's ledger reflects that the Debtor made one additional $150 payment toward the

3

amount due under the Agreed Order on June 9, 2015. (*Id.*)

Subsequently, problems arose regarding the Debtor's payments to the Association from August 10, 2015 to January 8, 2016. Six automated clearing house (ACH) payment transfers that were made from the Debtor's bank account during this time were either declined for insufficient funds or otherwise returned. (*See id.* at 7-8.) Accordingly, the Association charged five NSF fees to the Debtor's account, each for $29.50. (*Id.*) Only one payment of $171.26 made during this period via check posted successfully, on September 18, 2015, to the Debtor's account. (*See id.* at 7.)

The Debtor testified that, at that time, the balance in the bank account she used to pay her assessments was negative due to some sort of unauthorized use. (*See* Tr. 104:13-24.) She notified Hillcrest of this issue and inquired as to whether there was another method by which she could make her assessment payments. (*See* Tr. 104:20-22.) The Debtor testified that she was instructed to make payments to the Association through Hillcrest's Community Advantage website sponsored by Barrington Bank. (*See* Tr. 104:22-24 & 48:24-49:6.) According to the Debtor, she then stopped the ACH transfers and made a total of four payments online through the Community Advantage website, but the website provided no way to direct payments to the Association. (*See* Tr. 104:17-105:5.) As a result, the Debtor testified, she directed those online payments to another entity, Lombard Tower Condominiums ("Lombard"), one of the many other properties that Hillcrest manages.[4] (*See* Tr. 48:2-51:20 & 104:13-105:11.) The Debtor alleges that she made the following payments totaling $1,031.26: $171.26 on August 31, 2015; $172.00 on September 30, 2015; $345.00 on November 30, 2015; and $343.00 on January 5, 2016 (collectively, the "Online Payments"), for which she provided email receipts. (*See* Debtor's Ex.

---

[4] The Debtor testified that she made those payments to Lombard because she observed that Hillcrest's address and phone number were listed on the website under Lombard, along with her condominium unit number. (*See* Tr. 104:13-105-5.)

4

5; Tr. 45:25-46:18.) The Debtor stated that her own bank confirmed that the Online Payments had in fact been made to Hillcrest. (*See* Tr. 46:13-22.)

The Debtor also testified that, after making the Online Payments, she spoke with an accountant at Hillcrest who verified that those payments had, indeed, been made.[5] (*See* Tr. 46:13-47:5, 50:10-51:3 & 105:6-11.) The accountant directed the Debtor to the Association's attorneys to have them move the Online Payments from Lombard's account to the Debtor's account with the Association. (*See* Tr. 50:10-51:3.) The Debtor testified that she then attempted to discuss the matter with the Association's attorneys, but those attorneys refused to talk to her unless they could do so through counsel. (*See* Tr. 51:5-10.) Although the Online Payments were never moved to the Debtor's account with the Association (*see generally* Exs. HG 2, HG 3 & HG 4 (containing no entries for the Online Payments)), the Debtor testified that Hillcrest did not notify her that she was not making payments properly at the time those payments were made (*see* Tr. 105:6-11). The Association presented no evidence demonstrating that Hillcrest did not otherwise receive these payments from the Debtor outside of her account with the Association.

Collins testified that, as of December 31, 2015, the Debtor's account was delinquent by $3,580.43. (*See* Tr. 35:21-24.) Accordingly, the Association directed its attorneys to collect on the Debtor's account. (*See* Tr. 35:14-36:10.) As a result, the Association's attorneys appeared in both state court and bankruptcy court several times throughout 2016. (*See generally* Exs. HG 5 & HG 6; Tr. 74:17-86:4.)

In January 2016, an eviction of the Debtor from her condominium unit was scheduled with the DuPage County Sheriff. (*See* Tr. 69:25-70:11 & 71:18-23.) In response, the Debtor filed an emergency motion to stay the eviction; that motion was heard in state court on February

---

[5] The accountant, "Dee," with whom the Debtor alleges she spoke was unavailable as a witness because she had passed away sometime before the evidentiary hearing. (*See* Tr. 42:25-43:14, 46:13-47:5 & 50:10-51:3.)

10, 2016. (*See* Tr. 71:24-72:8 & 105:16-106:3.) At that time, the Association accepted a $2,000 payment from the Debtor and agreed not to reschedule the eviction until directed by the court to do so; the parties' agreement was memorialized by the state court with an order entered on February 10, 2016. (*See* Tr. 74:22-75:12 & 106:4-10; Ex. HG 8.) The emergency motion was then continued to allow the parties time to provide the state court with any other documentation showing payments made by the Debtor that had not been posted to her account. (*See* Tr. 75:13-76:2.)

The matter was continued from time to time as the parties negotiated a new payment plan for all amounts then owed to the Association. (*See* Tr. 76:17-79:7.) The parties disagreed primarily with respect to whether certain payments had been applied to the Debtor's account.[6]

On May 4, 2016, the Debtor's motion to stay the eviction was denied, and the Debtor was ordered to pay $1,500 to the Association within seven days and $350 per month until her account with the Association was "paid in full." (*See* Ex. HG 9; Tr. 78:18-79:7.) The Association was given leave to file a supplemental petition for attorneys' fees at that time, and the Debtor was given an opportunity to respond to such petition. (Ex. HG 9; *see* Tr. 79:11-18.)

On May 19, 2016, the Debtor filed, *pro se*, a chapter 7 bankruptcy case. (Case No. 16-16971, Docket No. 1; *see* Tr. 80:5-10.) As a result, instead of hearing the supplemental fee petition on June 1, 2016, the state court dismissed the Association's eviction case with leave for the Association to reinstate it.[7] (Tr. 80:5-18.) On July 8, 2016, the Association sought relief from the automatic stay, which the bankruptcy court granted, and the Debtor's chapter 7 case was also dismissed. (*See* Case No. 16-16971, Docket Nos. 23 & 24.)

---

[6] Hillcrest's ledgers reflect that the Debtor made payments totaling $1,520.08 during 2015 and $3,888.78 during 2016. (*See* Exs. HG 2, at 7-8 & HG 3.) As noted above, Hillcrest's ledgers do not include the Online Payments totaling $1,031.26.

[7] To date, the state court has not ruled on the Association's attorneys' supplemental fee petition, and, therefore, the "paid in full" amount pursuant to the state court's May 4, 2016 order has not been determined. (*See* Ex. HG 9.)

6

In September 2016, the Association sought leave to reinstate its eviction case against the Debtor. (*See* Tr. 83:9-13; *see also* Debtor's Ex. 11; Tr. 80:22-82:8 (explaining a typographical error with respect to the date of the proceedings contained in the transcript submitted as Debtor's Ex. 11).) On October 3, 2016, the Debtor filed, also *pro se*, her chapter 13 petition—the bankruptcy case now pending before the Court. (Case No. 16-31591, Docket No. 1.[8]) The state court then stayed its ruling on the Association's motion for leave to reinstate its eviction case against the Debtor and continued the matter to January 18, 2017. (*See* Tr. 85:21-86:1.) As far as the Court is aware, that motion is still unresolved. (*See* Tr. 86:2-4.)

On December 28, 2016, the Debtor filed a modified chapter 13 plan through which she proposes to pay a total of $857 to the Association. (*See* Docket No. 42, at 2.) The Association filed its objection to confirmation on January 12, 2017, arguing that the proposed plan improperly modifies the Association's rights as a secured creditor by failing to pay its claim in full pursuant to 11 U.S.C. § 1322(b)(2).[9] (Docket No. 53, at 2-3, ¶ 8.) Because the Debtor's plan does not provide for payment of its claim in full, the Association argues, the Court cannot confirm the plan pursuant to § 1325(a)(5). (*Id.*)

On January 26, 2017, the Association filed a proof of claim for $14,938.25, alleging that the claim is secured by a lien against the Debtor's condominium unit. (Ex. HG 12.) The Association explained to the Court during the April 25, 2017 hearing that its claim of $14,938.25 is broken down as follows: $1,533.75 for the remaining amount due pursuant to the Agreed Order and other assessments and fees due to the Association exclusive of any attorneys' fees beyond October 16, 2013; $12,045.00 for the Association's attorneys' fees and $293.50 for costs in state court; $650.00 for the Association's attorneys' fees and $176.00 in costs in the Debtor's

---

[8] Unless otherwise noted, future references to the docket are to the Debtor's current bankruptcy case, Bankr. No. 16-31591.

[9] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

7

prior bankruptcy case; and $240.00 in fees for the Association's attorneys to monitor a previous mortgage foreclosure case against the Debtor.[10] (*See* Tr. 92:12-95:13.)

The Association submitted two affidavits in support of its alleged attorneys' fees, which were prepared from billing records maintained in the ordinary course by the attorneys' firm. (Exs. HG 5 & HG 6; *see* Tr. 67:20-69:24.) The first affidavit is for the period October 16, 2015 to October 26, 2016 and relates to state court matters. (Ex. HG 5.) The second affidavit is for the period May 24, 2016 to July 8, 2016 and relates to work performed for the Association in connection with the Debtor's previous chapter 7 bankruptcy case. (Ex. HG 6.) The Association has already paid to its attorneys the fees and costs that were billed to it. (Exs. HG 5, at 8, ¶ 7 & HG 6, at 2, ¶ 5.)

The Debtor contests the amount that she owes to the Association. She alleges that only $602 is outstanding for past due assessments but says that she is willing to pay $857 to the Association to account for fees. (*See* Tr. 89:18-90:1; *see also* Docket No. 42, at 2.) Although the Debtor suggests that the payments she made to the Association were not properly credited against the balance owed pursuant to the Agreed Order (*see* Tr. 89:18-92:7), the Debtor did not submit any documentation of her own showing the Court why the Association is now owed only $602 for assessments.

After an exhaustive review of the testimony and the documents admitted into evidence in this matter, the Court is now ready to rule on both parties' objections.

## DISCUSSION

Chapter 13 of the Bankruptcy Code requires a debtor to pay in full a creditor whose debt is secured only by a lien against a debtor's principal residence. *See* 11 U.S.C. § 1322(b)(2); *In re*

---

[10] Although neither party presented evidence of the foreclosure case, the Debtor acknowledged that such a case was pending during 2013. (*See* Tr. 103:7-14.)

8

*Ginther*, 427 B.R. 450, 454-55 (Bankr. N.D. Ill. 2010). The Condominium Property Act (the "Act"), 765 ILCS 605/1 *et seq.*, and the agreement between the Association and the Debtor, set forth under the Association's Declaration of Condominium Ownership and Bylaws, provide for a lien in favor of the Association upon the Debtor's failure or refusal to make payments for common expenses when due. *See* 765 ILCS 605/9(g) (West 2016); Ex. HG 1, at 6 & 25-26, ¶ 1. This is a consensual lien that is authorized by statute. As such, bankruptcy courts have treated this type of lien as both a statutory lien and a consensual lien. *See In re Lund*, 187 B.R. 245, 252-53 (Bankr. N.D. Ill. 1995).

A court may confirm a chapter 13 plan if the allowed amount of a claim secured by such a lien is paid in full. *See* 11 U.S.C. § 1325(a)(5); *Ginther*, 427 B.R. at 453-54. In this matter, §§ 502(b) and 506(a) provide the mechanism by which the Court can determine the allowed amount of the Association's secured claim as of the date the Debtor filed her bankruptcy petition. *See* 11 U.S.C. §§ 502(b) & 506(a); *Ginther*, 427 B.R. at 453-54; *see generally In re Taylor*, 289 B.R. 379, 384-85 (Bankr. N.D. Ind. 2003) (discussing various circumstances under which a claim may be denied).

According to the parties' agreement, "all . . . attorneys' fees and expenses" in connection with unpaid common expenses are to be included in the amount due to satisfy the Association's lien. (*See* Ex. HG 1, at 25-26, ¶ 1.) The Act, on the other hand, provides that only "*reasonable* attorney fees incurred enforcing the covenants" of the Association's agreement may be included in the amount due under the Association's lien. *See* 765 ILCS 605/9(g)(1) (emphasis added). In the event of a conflict between an agreement and the Act, the Act controls. *See Spanish Court Two Condo. Ass'n v. Carlson*, 12 N.E.3d 1, 8 (Ill. 2014). Therefore, the Court evaluates, pursuant to Illinois law, the reasonableness of the portion of the Association's claim consisting

of attorneys' fees. *See, e.g., Lake Hinsdale Vill. Condo. Ass'n v. Dep't of Pub. Aid*, 698 N.E. 2d 214, 219 (Ill. App. Ct. 1998) (remanding the issue of the reasonableness of attorneys' fees and costs to the trial court). If the Court determines a portion of the fees to be unreasonable, then that portion of the Association's claim is unenforceable under the Act and, accordingly, unenforceable against the Debtor under the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(1); *Taylor*, 289 B.R. at 384 (discussing the unenforceability of a claim under non-bankruptcy law as a basis for denial of such claim).

Under Illinois law, any amount that the Court determines is owed by the Debtor to the Association is secured by a lien pursuant to the Act. *See* 765 ILCS 605/9(g)(1). Thus, to confirm her chapter 13 plan, the Debtor must provide full payment to the Association of the amount that the Court determines to be the Association's allowed secured claim. *See* 11 U.S.C. § 1325(a)(5).

I. **Accounting of the Debtor's Payments to the Association**

The Debtor raised a valid concern with respect to whether her payments were in fact applied to the balance she owed pursuant to the Agreed Order. While the Association provided documentary evidence prepared by Hillcrest related to the amounts owed and payments made by the Debtor, Hillcrest did not account separately for amounts owed pursuant to the Agreed Order and other charges appearing on the Debtor's account.[11] As a result, the Debtor's payments made toward the balance owed under the Agreed Order were used to pay down other amounts, making Hillcrest's overall accounting suspect.[12] Because the Court could not reconcile the information

---

[11] As noted above, the Association's attorneys prepared an accounting summary of the Debtor's account that excludes attorneys' fees but includes assessments and other fees. (*See* Ex. HG 4.) Because the beginning balance reflected in Exhibit HG 4 is inaccurate, *see supra* n.2, the Court finds that exhibit to be unreliable. Thus, the Court has not considered Exhibit HG 4 in its ruling on the parties' objections.

[12] Hillcrest's ledger suggests that the balance owed under the Agreed Order consisted of assessments, attorneys' fees, and other fees against which Hillcrest applied the Debtor's payments during 2013 and 2014. (*See* Ex. HG 2, at

in the ledgers and affidavits with the figure in the Agreed Order, the Court did its own accounting to determine what—if anything—is outstanding pursuant to the Agreed Order and whether other amounts are owed to the Association as of October 3, 2016, the date on which the Debtor filed her chapter 13 bankruptcy petition. *See* Ex. A, attached.[13]

Since the Debtor did not prepare her own accounting, the Court relied primarily on the information in Exhibits HG 2 and HG 3 submitted by the Association in deciding what payments had been made to the Association.[14] The Court also used these exhibits and the testimony at trial to determine what other charges were incurred by the Debtor after the Agreed Order had been entered.

### A. *Charges Incurred by the Debtor*

As of October 16, 2013, the date on which the Agreed Order was entered by the Circuit Court, the Debtor owed $6,852.39 to the Association. Because the Agreed Order was entered after the October 1, 2013 assessment had been charged to the Debtor's account, the Agreed Order included the assessment charge for October 2013.

Between November 1, 2013 and October 1, 2016, the Debtor incurred thirty-six monthly

---

6 (reflecting that payments made during April and May 2014 paid down, in part, late fees).) Thereafter, Hillcrest applied some of the Debtor's extra payments that were intended to pay down the balance of the Agreed Order against non-assessment charges incurred after the Agreed Order had been entered, even though the Debtor had not yet completed payments pursuant to the Agreed Order. (*See, e.g., id.* at 8 (applying a $2,000 payment made on February 29, 2016 to NSF fees incurred between September 16, 2015 and December 31, 2015).)

[13] Each of the entries in the middle five columns of the chart attached to this Memorandum Opinion as Exhibit A displays a rolling balance of the allowed charges incurred by the Debtor for the applicable period. For each date listed, either a payment was made or a charge was incurred on the Debtor's account with the Association. With respect to payments made by the Debtor between October 16, 2013 and June 28, 2016, the Court first applied all payments to the Debtor's monthly assessment and then to the balance owed under the Agreed Order.

[14] While the Court relied on payment information reflected in Exhibits HG 2 and HG 3, the Court finds the rolling balance information contained in the ledgers for the period October 16, 2013 to October 3, 2016 to not be credible. On October 1, 2013, the ledger reflected that $4,062.39 was due. (*See* Ex. HG 2, at 6.) The next entry was on October 22, 2013 for attorneys' fees in the amount of $905, bringing the rolling balance due at that time to $4,967.39. (*See id.*) The Agreed Order states, however, that the Association was owed $6,852.39 as of October 16, 2013. Due to this inconsistency, the rolling balance reflected in the ledgers is clearly inaccurate, and the Court finds that it is unreliable.

assessment charges, each for $171.26, for a total of $6,165.36. Additionally, the Debtor incurred five NSF fees of $29.50 each, for a total of $147.50, during the time that she stopped electronic payment transfers to the Association. (*See* Ex. HG 2, at 7-8.)

Between October 16, 2013 and October 3, 2016, the Association charged five late fees of $25 each to the Debtor's account. However, the first late fee, which was charged on October 31, 2013, relates to the assessment owed for October 1, 2013 and was, thus, not properly chargeable to the Debtor's account. The Debtor testified that she tendered $2,000 to the Association in court on October 16, 2013, which would have made the October assessment payment—included in the total owed to the Association under the Agreed Order—timely. (*See* Tr. 103:23-104:6.) For a reason unknown to the Court, the Association did not apply this $2,000 payment to the Debtor's account until November 11, 2013. (*See* Ex. HG 2, at 6; Tr. 32:15-33:6.) Accordingly, the Court finds that the first $25 late fee is not owed by the Debtor. The other late fees totaling $100, however, were properly charged to the Debtor's account for assessment payments that were not timely made to the Association.

The largest category of charges listed in the ledgers is attorneys' fees. Between October 16, 2013 and November 29, 2016,[15] the ledgers reflect a total of $16,194.50 in attorneys' fees. (*See* Exs. HG 2, at 6-8 & HG 3.) However, the entries for $905 on October 22, 2013 and $820 and $605 on January 21, 2014 are not supported by any evidence in the record as to what work was performed. (*See* Exs. HG 5 & HG 6 (containing no entries for October 22, 2013 or January 21, 2014).) Thus, the Court finds that these amounts were not properly charged to the Debtor's account. The reasonableness of the remaining $13,864.50 in attorneys' fees will be discussed separately, below.

---

[15] The three entries for attorneys' fees for $650, $2,505, and $720 on October 4, October 31, and November 29, 2016, respectively, relate to work performed before the Debtor filed her chapter 13 petition. (*See* Tr. 26:6-27:18.)

12

Aside from the attorneys' fees, the charges incurred by the Debtor between October 16, 2013 and October 3, 2016 are as follows: $6,852.39 under the Agreed Order, $6,165.36 in assessments, $147.50 in NSF fees, and $100 in late fees. Thus, the Debtor incurred a total of $13,265.25 in non-attorneys' fee obligations during that period.

### B. *Payments Made by the Debtor*

As noted above, the Debtor made a $2,000 payment to the Association on October 16, 2013. She also made fourteen payments of $321.26 between November 4, 2013 and June 9, 2015, totaling $4,497.64. Between December 9, 2014 and September 18, 2015, the Debtor made eight payments of $171.26 totaling $1,370.08, which are reflected in Hillcrest's ledger.[16]

During the time that the Debtor experienced trouble with her bank account, the ledger reflects that most of the payments that the Debtor made were returned to her. (*See* Ex. HG 2, at 7-8.) Therefore, the Court will not credit the Debtor's account with the following payments to the Association that appear in Hillcrest's ledger: $171.26 on August 10, 2015; $171.26 on September 10, 2015; $171.26 on October 9, 2015; $321.26 on November 9, 2015; $171.26 on December 9, 2015; and $321.26 on January 8, 2016. (*See id.*)

The Debtor also paid $2,000 on February 29, 2016, $515 on April 5, 2016, and $1,031.26 on June 28, 2016 and made two payments of $171.26 on August 10, 2016, all of which totals $3,888.78. (*See id.* at 8; Ex. HG 3.)

In addition to the amounts that appear in Hillcrest's ledgers as detailed above, the Court will credit the Debtor with the Online Payments she made totaling $1,031.26. The Association did not rebut the Debtor's credible offer of proof that Hillcrest received those payments, albeit in a different account at Hillcrest. Thus, the Court finds that the Debtor paid $1,031.26 between

---

[16] The chart attached as Exhibit A contains nine payment entries of $171.26 for the period December 9, 2014 to September 18, 2015 because the $171.26 payment entry for August 31, 2015 corresponds to one of the Online Payments.

13

August 31, 2015 and January 5, 2016 for which the Association did not give her credit.

In total, the Debtor paid $12,787.76 to the Association between October 16, 2013 and October 3, 2016. As the chart attached as Exhibit A shows, the Debtor paid off the balance under the Agreed Order on June 28, 2016.

Between the charges incurred and the payments made, the Court finds that, as of the petition date, the Debtor owed $477.49 in non-attorneys' fee obligations to the Association. This figure consists of the following: $342.52 for assessments, $34.97 for NSF fees, and $100 for late fees. (*See* Ex. A, attached.)

## II. Attorneys' Fees

The Court finds that not all of the attorneys' fees incurred by the Association and charged to the Debtor's account were reasonable under the circumstances. Although it appears that the Debtor was not current on her payments under the Agreed Order beginning in December 2014—when Hillcrest stopped deducting $150 in addition to the regular assessment amount—the Association did not seek the remaining amount due from the Debtor at that time. It was not until the following year that the Association involved its attorneys to collect the balance due pursuant to the Agreed Order—after the Association could not account for the Online Payments made to Hillcrest.

The Court finds the Debtor's testimony to be credible with respect to her communications with Hillcrest when the Online Payments were made. Had Hillcrest worked with the Debtor to locate the Online Payments instead of directing her to the Association's attorneys, it is likely that the Online Payments could have been identified, transferred to the Association, and properly applied to the Debtor's account. Additionally, Hillcrest could have helped the Debtor get back on track with respect to the remaining amount owed to the Association to correct the error that

reduced the Debtor's monthly automatic bank transfer from $321.26 to $171.26 in December 2014.[17]

Instead, from December 22, 2015 through November 29, 2016, the Association incurred, according to Hillcrest's ledgers, $13,864.50 in attorneys' fees and costs to collect on the Debtor's account.[18] These attorneys' fees are unreasonable in light of Hillcrest's refusal to communicate in a constructive way with the Debtor and to mitigate what turned out to be a costly legal battle for the Association. The Association may be responsible for paying the attorneys' fees for Hillcrest's actions, but the Court will not allow the Association to seek recompense from the Debtor for those actions.[19]

The Court will, however, hold the Debtor responsible for the attorneys' fees and costs incurred by the Association for work performed in connection with the Debtor's previous chapter 7 case, because it was the Debtor who sought an order for relief from the bankruptcy court in May 2016. As such, the $826 in attorneys' fees and costs incurred by the Association in seeking relief from the automatic stay were reasonable and will be allowed.

---

[17] The Debtor testified that, instead of working with her to resolve her account, the Association's managers, including Collins, were hostile toward her on numerous occasions. (*See* Tr. 101:3-108:24.) The Court observed some of that hostility toward and impatience with the Debtor during the April 25, 2017 hearing.

[18] The Court acknowledges the discrepancy between this figure and that which the Association claims that the Debtor owes for attorneys' fees pursuant to its proof of claim. *See supra*, at 7-8 (totaling $13,404.50 in attorneys' fees and costs). This discrepancy is due, in part, to inconsistencies between and among (a) amounts appearing in Hillcrest's ledgers, (b) entries that the Association's attorneys made in their affidavits, and (c) an inaccurate rolling balance in one of Hillcrest's ledgers (*see supra* n.14). (*Compare* Exs. HG 2, at 6-8 & HG 3, *with* Ex. HG 5 & HG 6.) Hillcrest's application of some of the Debtor's payments to attorneys' fee obligations rather than toward the balance owed under the Agreed Order also contributed to this discrepancy. (*See* Ex. HG 2, at 6-8.)

[19] Because the Court holds that the Debtor will not bear the responsibility of paying a large portion of the attorneys' fees incurred by the Association, the Court need not discuss each of the fee entries that appear in the affidavits. (*See* Exs. HG 5 & HG 6.) However, the Court observes that a substantial portion of the fees sought seem excessive. Notably, in connection with most state court appearances during 2016, the attorney for the Association charged a fee of $900 for each appearance, which constitutes three billable hours, regardless of how much time such appearances actually took. (*See* Ex. HG 5, at 3-7; *see also* Tr. 96:23-98:9.) Additionally, in October 2016, the attorneys charged the Association over $700 to prepare an attorney at a different firm to appear on behalf of the Association because one of the state court dates occurred on a Jewish holiday observed by the Association's regular attorney. (*See* Ex. HG 5, at 7 & 8-9, ¶ 8.) The Court is dubious as to whether it would allow the full amount of such fees were it required to render a decision on those issues.

Based on the foregoing, the Court finds that the Debtor owes the Association a total of $1,303.49 for the following: $342.52 for assessments, $34.97 for NSF fees, $100 for late fees, and $826 in attorneys' fees and costs. This total figure reflects both the allowed amount of the Association's pre-petition claim and the secured amount which the Debtor must pay to the Association in full through her chapter 13 plan.

## CONCLUSION

The Debtor's objection to the Association's proof of claim is sustained in part and overruled in part. The Association's claim is allowed in the amount of $1,303.49, which is fully secured by a lien in favor of the Association pursuant to 765 ILCS 605/9. The remaining portion of the Association's claim is disallowed.

The Association's objection to confirmation is sustained in part insofar as the Debtor's proposed plan does not provide for payment of the Association's secured claim in the amount of $1,303.49 pursuant to §§ 1322(b)(2) and 1325(a)(5) of the Bankruptcy Code.

A separate order will be entered consistent with this Memorandum Opinion.

**Dated:** July 5, 2017         **ENTERED:**

_____
JANET S. BAER
United States Bankruptcy Judge

| Date | Agreed Order Balance | Assessments Balance | NSF Fees Balance | Late Fees Balance | Allowed Attorneys' Fees Balance | Payments Made |
|---|---|---|---|---|---|---|
| 10/16/2013 | $ 6,852.39 | $ - | $ - | $ - | $ - | |
| 10/16/2013 | $ 4,852.39 | $ - | $ - | $ - | $ - | $ 2,000.00 |
| 11/1/2013 | $ 4,852.39 | $ 171.26 | $ - | $ - | $ - | |
| 11/4/2013 | $ 4,702.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 12/1/2013 | $ 4,702.39 | $ 171.26 | $ - | $ - | $ - | |
| 12/5/2013 | $ 4,552.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 1/1/2014 | $ 4,552.39 | $ 171.26 | $ - | $ - | $ - | |
| 1/6/2014 | $ 4,402.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 2/1/2014 | $ 4,402.39 | $ 171.26 | $ - | $ - | $ - | |
| 2/5/2014 | $ 4,252.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 3/1/2014 | $ 4,252.39 | $ 171.26 | $ - | $ - | $ - | |
| 3/3/2014 | $ 4,102.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 4/1/2014 | $ 4,102.39 | $ 171.26 | $ - | $ - | $ - | |
| 4/16/2014 | $ 3,952.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 5/1/2014 | $ 3,952.39 | $ 171.26 | $ - | $ - | $ - | |
| 5/9/2014 | $ 3,802.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 6/1/2014 | $ 3,802.39 | $ 171.26 | $ - | $ - | $ - | |
| 6/9/2014 | $ 3,652.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 7/1/2014 | $ 3,652.39 | $ 171.26 | $ - | $ - | $ - | |
| 7/9/2014 | $ 3,502.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 8/1/2014 | $ 3,502.39 | $ 171.26 | $ - | $ - | $ - | |
| 8/8/2014 | $ 3,352.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 9/1/2014 | $ 3,352.39 | $ 171.26 | $ - | $ - | $ - | |
| 9/9/2014 | $ 3,202.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 10/1/2014 | $ 3,202.39 | $ 171.26 | $ - | $ - | $ - | |
| 10/9/2014 | $ 3,052.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 11/1/2014 | $ 3,052.39 | $ 171.26 | $ - | $ - | $ - | |
| 11/10/2014 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 12/1/2014 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 12/9/2014 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 1/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 1/9/2015 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 2/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 2/9/2015 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 3/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 3/9/2015 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 4/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 4/9/2015 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 5/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 5/11/2015 | $ 2,902.39 | $ - | $ - | $ - | $ - | $ 171.26 |

| Date | Agreed Order Balance | Assessments Balance | NSF Fees Balance | Late Fees Balance | Allowed Attorneys' Fees Balance | Payments Made |
|---|---|---|---|---|---|---|
| 6/1/2015 | $ 2,902.39 | $ 171.26 | $ - | $ - | $ - | |
| 6/9/2015 | $ 2,752.39 | $ - | $ - | $ - | $ - | $ 321.26 |
| 7/1/2015 | $ 2,752.39 | $ 171.26 | $ - | $ - | $ - | |
| 7/8/2015 | $ 2,752.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 8/1/2015 | $ 2,752.39 | $ 171.26 | $ - | $ - | $ - | |
| 8/31/2015 | $ 2,752.39 | $ - | $ - | $ - | $ - | $ 171.26 |
| 9/1/2015 | $ 2,752.39 | $ 171.26 | $ - | $ - | $ - | |
| 9/16/2015 | $ 2,752.39 | $ 171.26 | $ 29.50 | $ - | $ - | |
| 9/18/2015 | $ 2,752.39 | $ - | $ 29.50 | $ - | $ - | $ 171.26 |
| 9/30/2015 | $ 2,580.39 | $ - | $ 29.50 | $ - | $ - | $ 172.00 |
| 10/1/2015 | $ 2,580.39 | $ 171.26 | $ 29.50 | $ - | $ - | |
| 10/15/2015 | $ 2,580.39 | $ 171.26 | $ 59.00 | $ - | $ - | |
| 11/1/2015 | $ 2,580.39 | $ 342.52 | $ 59.00 | $ - | $ - | |
| 11/30/2015 | $ 2,577.91 | $ - | $ 88.50 | $ - | $ - | $ 345.00 |
| 12/1/2015 | $ 2,577.91 | $ 171.26 | $ 88.50 | $ - | $ - | |
| 12/31/2015 | $ 2,577.91 | $ 171.26 | $ 118.00 | $ - | $ - | |
| 1/1/2016 | $ 2,577.91 | $ 342.52 | $ 118.00 | $ - | $ - | |
| 1/5/2016 | $ 2,577.43 | $ - | $ 118.00 | $ - | $ - | $ 343.00 |
| 1/19/2016 | $ 2,577.43 | $ - | $ 147.50 | $ - | $ - | |
| 2/1/2016 | $ 2,577.43 | $ 171.26 | $ 147.50 | $ - | $ - | |
| 2/29/2016 | $ 748.69 | $ - | $ 147.50 | $ - | $ - | $ 2,000.00 |
| 3/1/2016 | $ 748.69 | $ 171.26 | $ 147.50 | $ - | $ - | |
| 4/1/2016 | $ 748.69 | $ 342.52 | $ 147.50 | $ - | $ - | |
| 4/5/2016 | $ 576.21 | $ - | $ 147.50 | $ 25.00 | $ - | $ 515.00 |
| 5/1/2016 | $ 576.21 | $ 171.26 | $ 147.50 | $ 25.00 | $ - | |
| 6/1/2016 | $ 576.21 | $ 342.52 | $ 147.50 | $ 25.00 | $ - | |
| 6/28/2016 | $ - | $ - | $ 34.97 | $ 25.00 | $ - | $ 1,031.26 |
| 6/30/2016 | $ - | $ - | $ 34.97 | $ 50.00 | $ - | |
| 7/1/2016 | $ - | $ 171.26 | $ 34.97 | $ 50.00 | $ - | |
| 7/8/2016 | $ - | $ 171.26 | $ 34.97 | $ 50.00 | $ 826.00 | |
| 7/31/2016 | $ - | $ 171.26 | $ 34.97 | $ 75.00 | $ 826.00 | |
| 8/1/2016 | $ - | $ 342.52 | $ 34.97 | $ 75.00 | $ 826.00 | |
| 8/10/2016 | $ - | $ 171.26 | $ 34.97 | $ 75.00 | $ 826.00 | $ 171.26 |
| 8/10/2016 | $ - | $ - | $ 34.97 | $ 75.00 | $ 826.00 | $ 171.26 |
| 9/1/2016 | $ - | $ 171.26 | $ 34.97 | $ 75.00 | $ 826.00 | |
| 9/30/2016 | $ - | $ 171.26 | $ 34.97 | $ 100.00 | $ 826.00 | |
| 10/1/2016 | $ - | $ 342.52 | $ 34.97 | $ 100.00 | $ 826.00 | |
| 10/3/2016 | $ - | $ 342.52 | $ 34.97 | $ 100.00 | $ 826.00 | |